WALSH ET AL., APPELLANTS, *v.* MUELLER, ET AL., RESPONDENTS.

[Submitted May 2, 1895.   Decided May 13, 1895.]

MINES AND MINING—*Location of claim—Evidence of discovery of lead.*—In an adverse suit to determine the right to the possession of mining property, a finding by the jury that the plaintiff did not discover a lead on the disputed premises on September 15, 1890, with at least one well defined wall and containing valuable deposits of silver, lead and manganese, will be set aside as contrary to the evidence where there was uncontradicted testimony by plaintiffs that they had sunk a shaft on the ground to a depth of from forty to fifty feet, and, on that date, had discovered a lead about fourteen inches wide in the bottom of the shaft, which contained manganese and quartz and carried silver, lead and iron, that there was a foot wall and that they afterwards sunk four feet in the clear on the lead, there being further testimony by a miner who entered the shaft in the following April that he saw the wall on each side of the lead; that the vein contained manganese and quartz and that the indications were sufficient to justify further work in exploiting it.

SAME—*Same—Instructions.*—An instruction in an adverse suit which, after defining the dimensions and course of a lawful location, charges, in effect, that if plaintiffs with

knowledge of the direction of their vein, fraudulently located their claim in disregard thereof for the purpose of appropriating surface ground to which they would not have been entitled had they located their claim along the line of the vein, then, even though their location was in other respects sufficient, this fact would render the location void, is reversible error, where no evidence of any such fraudulent purpose was introduced nor would have been admissible under the pleadings.

INSTRUCTIONS.—It is error to give instructions not warranted by the pleadings and evidence. (*Brownell* v. *McCormick*, 7 Mont. 12; *Kelly* v. *Cable Co.*, 7 Mont. 70, cited.)

*Appeal from Sixth Judicial District, Meagher County.*

SUIT upon adverse claim. Defendants' motion for a new trial was denied by HENRY, J. Reversed.

*H. G. McIntire* and *McConnell, Clayberg & Gunn*, for Appellants.

The test of a discovery, whether or not it contains valuable mineral deposits, is the willingness of the locator to expend his time and money in further development of the same. (*Shreve* v. *Copper Bell Mining Co.*, 11 Mont. 309.) It was an abuse of discretion in refusing plaintiffs permission to reopen their case for the purpose of showing the course of the vein in the Haphazzard to be within the side lines of that claim. (*Lisman* v. *Earley*, 15 Cal. 199; *Barry* v. *Bennett*, 45 Cal. 80.) Where a location is made the presumption is that the vein extends through the entire length of the claim. (*Patterson* v. *Hitchcock*, 3 Col. 542, s. c. 5 Col. 542; *Armstrong* v. *Lower*, 6 Col. 399, s. c. 6 Col. 581.) Instruction No. 8 is hypothetical, not based on any evidence adduced at the trial, nor is it within the allegations of the pleadings. Nowhere do the pleadings allege fraud in the location of plaintiffs' claim. That the giving of hypothetical instructions—not founded on the evidence adduced—is error, is well settled. (*Brownell* v. *McCormick*, 7 Mont. 12; *Kelly* v. *Cable Co.*, 7 Mont. 70; Thompson Charging Jury, § 62–63.) The instruction is peculiarly prejudicial when it is considered that plaintiffs were prevented from showing by additional testimony their location to be within their side lines.

*Toole & Wallace*, for Respondents.

Section 262, page 125, Compiled Statutes, prohibits a court from allowing a reopening, except "for good reason, and in furtherance of justice." It has been held that error cannot ever be predicated on such action of the court. ( *Williams* v. *Hayes,* 20 N. Y., 58-60; *Lurrsen* v. *Lloyd,* 25 Atl. 294). It is questionable whether the offered instruction as to the presumption as to the line of the vein states the law. The last of the two cases cited by appellant (6 Col., 399) says: "We are aware that there is excellent reason and weighty authority for the contrary position of counsel." And the Supreme Court of the United States does not suggest such a presumption, but inferentially would seem to leave it a straight question of fact. (*Iron Silver Co.* v. *Elgin Co.,* 118 U. S., 207, quoted in 152 U. S., 228.) "For the exercise of this right it must appear that the vein outside is identical with and a continuation of the ore inside those lines." ( *Cheeseman* v. *Iron S. Co.,* 116 U. S., 536). Certainly it could only be applicable to a location regularly made with a valid prior discovery. (*Flick* v. *Gold Hill Co.,* 8 Mont. 304, 305, which latter case would seem to be unfavorable to any theories of presumption). But assuming that it was free from objection in this respect, it was yet too general in its language in referring to discovery—not even using the words valid or legal, or sufficient in law, or as elsewhere defined to you. Again, the instruction was not applicable to the case. We originally alleged, and on the trial, without objection proved, and the jury by their general verdict may have found, a fraudulent and willful disregard of the line of the vein in making the location, and on this issue the jury was properly charged. (*Larkin* v. *Dolly,* 53 Fed. Rep., 333, a patent case; *U. S.* v. *Iron Silver Co.,* 128 U. S., 673, 676; 15 Am. & Eng. Enc. of Law, p. 529, note 2, and 531.) Our contention led to the result that even had the Haphazzard a legal prior discovery, and been in other respects a regular location, yet this willful and fraudulent disregard of the vein line would have avoided it, and left its entire surface open to our amended Safety Location. And, under the authorities,

we doubtless could have avoided the location upon a mere will-
ful, and without any fraudulent, disregard of the vein lines.
So that the instruction given by the Court was more favorable
to plaintiff than he could have asked. But were the disregard
merely unintentional, i. e., honestly accidental, the only pen-
alty would be that the side lines would become end lines.
(*King* v. *Amy & Silversmith M. Co.*, 152 U. S., 227, 228; *Mc-
Clinton* v. *Bryden*, 73 Am. Dec. 109.)   The proofs offered on
either side of this case, if all believed by the jury, would have
been sufficient to have warranted a verdict in favor of either
claim, so far as the size of the vein was concerned.  (*Shreve* v.
*Copper Bell Co.*, 11 Mont. 309, 335; *King* v. *Amy & Sil-
versmith M. Co.*, 9 Mont. 565; 15 Am. & Eng. Enc. of Law,
page 530; *Iron Silver Co.* v. *Cheeseman*, 116 U. S., page
530, (2 McCreary, 191); *Raisbeck* v. *Anthony*, 72 Wis., 572;
*McClintock* v. *Bryden*, 63 Am. Dec., 110; *Foote* v. *Nat'l
M'ng Co.*, 2 Mont. 404; *Moxon* v. *Wilkinson*, 2 Mont. 424.)

PEMBERTON, C. J.—Plaintiffs claim to be the owners of the
Haphazzard quartz lode mining claim, located, as they allege
in their complaint, on the 16th day of September, 1890.   The
said claim is situated in Montana (unorganized) mining district,
Meagher county.   The complaint alleges that the defendants
claim to be the owners of the Safety quartz lode mining claim,
situated in the same mining district; that on the 31st day of
January, 1891, the defendants made application to the United
States land office at Helena, Mont., to obtain a patent to said
Safety lode claim; that the premises covered and embraced
within and by the said Safety lode application cross and over-
lap all of said Haphazzard lode, and include 6.02 acres of the
said Haphazzard lode claim; that plaintiffs, within the time re-
quired by law, filed their adverse claim to the premises sought
to be entered and patented under the name of the "Safety
Lode."   This suit is brought to try the right to the title and
possession of the premises in conflict and dispute.   The case
was tried to a jury.   Certain findings of fact were submitted
to and returned by the jury. There was also a general verdict

for the defendants. Plaintiff's filed their motion for a new trial, which was refused by order of the court. From this order this appeal is prosecuted.

Appellants assign as error that finding No. 2 is not warranted by the evidence; in fact, they say that said finding is absolutely contrary to the evidence. Finding No. 2 is as follows:

"Did Walsh and Sweeney enter upon a portion of the unappropriated public lands of the United States prior to the 15th day of September, 1890, and on said 15th day of September, 1890, discover thereon a lead or lode with at least one well-defined wall, and containing rock in place bearing valuable mineral deposits of silver, lead, and manganese? Answer. No."

As to whether a vein was discovered on the Haphazzard claim, and when such discovery was made, P. T. Walsh testified as follows: My name is P. T. Walsh. I reside in Neihart. My business is mining. I have been 15 years in that business. My age is 37. I was born in California, and am a citizen of the United States. I am acquainted with the Haphazzard mining claim. I am one of the locators of it. I first became acquainted with it when we located it. I did some work on the Haphazzard ground before it was located as the Haphazzard. I went there the 22d or 23d of August, 1890. I worked about one month after that time. I helped around there a little. I also did a little mining work there. The shaft was on the northeast part of the claim. I began work in that shaft the 22d or 23d of August, and worked about one month. I worked there myself until the night of September 15, 1890. On that night I was working on the upper shaft. Two men were at work there. About 10 o'clock I went up there, and went down in the shaft, and dug it deeper. The more we dug the more we found croppings of the lead. I think we sunk three feet that night,—a narrow trench on this lead. This lead was 14 inches wide. On the east of it the formation was granite. With reference to the creek, the east side is the upper side of the shaft. I think we were down 47 feet when

this lead was discovered. I did not measure it at the time. We then sunk 3 or 3½ feet more. This lead contained manganese, also a little talc. The formation on the east side was the foot-wall of the lead. This lead came through on the east side, and went angling and dipped towards the west. The general course of the vein is a few degrees off of north and south. We sunk four feet in the clear on this lead, when the shaft became dangerous. We then did no further work. We quit work about the last of September. The manganese that I mentioned contained croppings of silver lead ore. The lead matter also carried iron. After making this discovery, we stuck a notice on the claim. We then put up stakes 10 feet in an eastern direction from the shaft, one north of the shaft 12 feet. We measured 300 feet on each side of the northern stake, on the south line of the Compromise ground. We then went to the southwest corner of the Keagan location, and put up a stake there. Six hundred feet to the west we placed another stake. All the places which are indicated on the map we marked with stakes. I do not remember the points as they came, but they are all described in the notice of location. I staked it all around. Patrick Sweeney was with me. After we had done this staking we sent the location notice on the stage to be recorded." He also testifies that very soon after the discovery they quit work until in April, 1891.

Patrick Sweeney testifies as follows: "We struck lead matter in the shaft about 45 feet down. This lead was struck in bedrock, composed, I think, of granite. I do not know what the lead contained, but it was of such a nature that it could be distinguished from the surrounding rock. I was not in the mine at the time the lead was struck. Mr. Walsh was there. We both went down in the shaft. Mr. Walsh was there sinking the shaft. That night I should judge we sunk three feet further. I think the vein was from 12 to 15 inches wide. The work that we were doing was sinking in the shaft. After the discovery the shaft was timbered up. I do not know exactly the course or dip of the lead. It came in the shaft from the west,—from the hill side. I stayed at the shaft that night. I

wrote a location notice, and put a copy of it on a post. We then staked the ground. We put up four stakes at the four corners of the claim. Mr. Walsh marked them, I remember, 'A,' 'B,' 'C,' 'D.' He also put the name of the claim on the stakes. The stakes were driven into the ground, and rocks were piled around them.''

Stephen Pierce testifies as follows: '' I have worked in the upper shaft on the ground. I worked there September 16th and 17th. At that time the shaft was 40 or 50 feet deep, I should judge. I went to the bottom of that shaft. On the east side of the shaft there was granite. In the shaft lay a ledge of mineral containing manganese, talc, and lead matter. The course of this ledge was north and south. It dips or pitches to the west. The shaft had been sunk some 5 feet on the ledge, and at the upper side of the ledge about $3\frac{1}{2}$ feet. I measured this ledge. It was about 1 foot wide. It contained some manganese, talc, and quartz. The talc was under the ledge at the footwall. This wall was on the east. The ledge carries silver, lead, iron, and I saw some galena there. I am acquainted with the mines of Neihart. The dip of the mines at that place is generally towards the west. I have been engaged in mining in Neihart ever since I came to the town. As these mines increase in depth the character of the same improves.''

Thomas Starboard testifies as follows: ''I reside in Neihart. My business is mining. I have been engaged in mining since 1870, 21 years or more ago. I am engaged in mining at Neihart. I am foreman in the Monarch mine there. I know the Haphazzard shaft. I was there in April, 1891. I went into it at that time. I went to the bottom. The shaft is about 40 or 50 feet deep. The shaft was timbered to about 5 or 6 feet from the bottom. I saw the lead in the south end of the shaft, 6 or 8 feet up from the bottom. I saw the footwall. I saw the wall on each side of the vein. The vein contains manganese and quartz, with oxidized iron and talc. It was very fair lead matter. The vein pitched to the west. The strike or course of the vein is from northwest to southeast. There was sufficient indication, in my judgment, as a miner, to justify

further work in exploiting this vein. I saw no indication of a drift. There was so much water in the shaft." Starboard examined this mine about the time work was resumed, in April, 1891.

This evidence, we think, shows that the discovery was made on this Haphazzard claim on the 15th of September, 1890. A close inspection of the record fails to show that this evidence is contradicted in any respect whatever. We are unable to discover any conflict in the evidence as to when this discovery was made. It is not disputed that a discovery of a vein or lead was made on this claim by plaintiffs; but the respondents contend that it was not made on or before the 15th day of September, 1890. We find no evidence to sustain this contention of the respondents. This is not a question of the conflict of evidence. The contention of appellants is that there was no evidence to justify the finding of the jury under consideration. We think the position of appellants is amply sustained by the record. As this finding is not supported by the evidence, but is directly contrary to all the evidence in the case, we think the court erred in approving it, and denying a motion for a new trial.

The appellants assign as error the giving of instruction No. 8, which is as follows : "The defendants also insist that, even should it be found from the evidence that plaintiffs' location was otherwise sufficient, as based upon a sufficient discovery of a vein whose apex lay within their ground, yet it is void because it was made in willful and fraudulent violation of the law as to surface ground. On this point you are instructed that the act of congress provides that the locator take no more than 1,500 feet in length, nor more than 300 feet in width, on each side of the vein. This contemplates a location to be made nearly parallel with the line of the vein, and if a locator knowing the line and course of his vein, and willfully, and with a fraudulent purpose, locate his claim in disregard of such line and course of the vein, and establish its length, not along the vein, but across it, to an excess of several hundred feet or more beyond the 300-foot limit allowed by congress for the

fraudulent purpose of gaining and appropriating such excess surface ground as his mining claim, this would be in deliberate violation of the law, and a locator so acting could gain no rights whatever thereby, but his location would be absolutely null and void, and he would be left in as bad a position as if one had never been attempted to be made. In this case defendants claim that the line of plaintiff's alleged vein ran in a course practically opposite to the length of their claim as they located it. How this is you will determine from all the evidence before you, but if from such evidence it should appear that such was the case, and that plaintiffs, with the knowledge of the direction of their vein, fraudulently located their claim in disregard of the line of the vein as above defined, then, even though they should satisfy you by a full preponderance of evidence that their location was in all other respects sufficient, yet this fact alone would render location void, and leave them without rights.''

There is no allegation in the pleadings that plaintiffs in locating the Haphazzard claim committed, or attempted to commit, any fraud against the United States. There was no evidence introduced to show anything of the kind. If evidence had been introduced for that purpose, we think it would have been error, as there is no issue made by the pleadings that would render such evidence admissible. We think it was error to give instructions that were not warranted by the pleadings and evidence. (*Brownell* v. *McCormick*, 7 Mont. 12; *Kelly* v. *Cable Co.*, 7 Mont. 70.

On account of the foregoing errors the order appealed from is reversed, and cause remanded for new trial.

*Reversed.*

DE WITT and HUNT, JJ., concur.