YODER, APPELLANT, *v.* REYNOLDS, RESPONDENT.

(No. 1,544.)

(Submitted April 11, 1903.   Decided May 11, 1903.)

*Fraudulent Conveyances—Admissibility of Evidence—Objections to Evidence—Motion to Strike Out Evidence—Waiver —Instructions.*

| | |
|---|---|
| 28 | 183 |
| 28 | 434 |
| 28 | 183 |
| 29 | 54 |
| 29 | 423 |
| 29 | 521 |
| 28 | 183 |
| 32 | 93 |
| 32 | 99 |
| 28 | 183 |
| 35 | 7 |

1.   Civil Code, Section 1372, provides that the good will of a business is property, transferable like any other.   A debtor transferred his stock of goods by an itemized bill of sale, which did not include the good will of the business.   *Held,* on an issue of fraud towards creditors in the conveyance, that evidence as to the value of the good will was inadmissible.

2.  Where a question asked a witness calls for evidence which is wholly inadmissible for any purpose, it is not error for the court to sustain a mere general objection to it.

3.  Where an offer of testimony includes that which is admissible with that which is not, and the competent and incompetent are blended together, it is not error for the court to sustain a mere general objection to its admission.

4.  A party who permits incompetent testimony to go in without objection waives his right to object, and cannot move to strike it out.

5.  Where testimony is offered which may be competent upon the showing made, and therefore no objection is made to it, and its incompetency is afterwards developed; or when incompetent testimony is volunteered by a witness in response to a proper question, such testimony should be stricken out on motion.

6.  On an issue of fraud towards creditors in a debtor's conveyance, the court instructed that if a prior transfer from his partner to the debtor was made without consideration or secretly, or for any fraudulent purpose, or to allow the debtor to make the transfer in question with intent to defraud creditors of the partnership, then the conveyance in issue would be invalid. *Held* error, as permitting the conveyance to be invalidated though the grantee was an innocent purchaser for value.

7.  The court further instructed that if the grantee was not at the time of the conveyance the legal or real owner of notes given by the debtor, the cancellation of which was the consideration for the conveyance, but the facts concerning the true ownership were concealed for the purpose of defeating partnership creditors, the conveyance would be void. It appeared that the notes were signed by the grantee, and given to a payee who afterwards became his wife. *Held,* that both instructions were, as a whole, erroneous, as telling the jury, in effect, that the grantee did not have the right to secure himself by purchasing the property in good faith, even though he was liable on the notes.

8.  The latter instruction was also erroneous, as it was immaterial to the creditors of the partnership whether the ownership of the notes was in the grantee or his wife.

9.  The court instructed that if the prior transfer to the debtor from his partner was not made for value or in good faith, and was not disclosed to creditors, then it would not vest the title in the debtor alone, but, if the partnership or the debtor continued to carry on the business under the partnership name, then the conveyance would be void towards. creditors of the firm. *Held* error, as whether the transfer between the partners was fraudulent or not, it gave to the debtor the legal title, so as to enable him to give an absolutely good title to a *bona fide* purchaser.

10.  Instructions must be warranted by the pleadings and evidence.

11.  Instructions should not be argumentative in form.

12.  It is error for the court in an instruction to comment on the weight to be given the evidence of the parties to the action.

13.  It is error for the court to give conflicting instructions.

14.  In a suit for the conversion of personalty, and also damages for a trespass on realty possessed by plaintiff as a tenant, it is error to instruct that the burden is on the plaintiff to show his right to the possession of "the property in controversy," since, though the leasehold was in controversy, plaintiff was—under the proofs adduced—entitled to nominal damages for the defendant's trespass thereon.

15.  Where a sheriff levies on personalty in defendant's warehouse, and remains in possession of the premises, defendant is entitled to nominal damages, even though no special damage is shown.

16.  It is error for the court in an instruction to incorrectly state the initials of a party's name.

17. A court, in its instructions, should be brief and clear, it should not indulge in needless repetition and legal verbiage, nor should it attempt to give all the law extant upon the subject under consideration.

*Appeal from District Court, Silver Bow County; William Clancy, Judge.*

ACTION for conversion of personalty and for trespass on realty by A. N. Yoder against S. J. Reynolds. From an order refusing a new trial after judgment for defendant, plaintiff appeals. Reversed.

*Messrs. McBride & McBride,* for Appellant.

Under the law, as it existed in 1896, the first in time was first in right; and plaintiff, by his diligence, obtained a preference which it was the duty of the court to protect. (Civil Code, Secs. 4483, 4513; Bump on Fraudulent Conveyances, 183; *Greene* v. *Tanner,* 49 Mass. 411; *Hubbard* v. *Taylor,* 5 Mich. 155.)

In March, 1896, a creditor violated no rule of law when he took payment of his demand in good faith, although others were thereby deprived of all means of obtaining satisfaction of equally meritorious claims. (*Gray* v. *St. John,* 35 Ill. 222; *Hill* v. *Bowman,* 35 Mich. 191; *Ames & Frost* v. *Heslet,* 19 Mont. 188.)

An instruction not based upon evidence in the case is erroneous. (*Brownell* v. *McCormick,* 7 Mont. 12, 17; *Kelley* v. *Cable Co.,* 7 Mont. 20; *Walsh* v. *Mueller,* 16 Mont. 180; *Goodkind* v. *Gilliam,* 19 Mont. 385-388.)

Instructions 5 and 6 are erroneous in that they are argumentative, and purport to express the opinion of the court upon the evidence in the case; moreover, instruction 6 ignores entirely the rights of the plaintiff as a *bona fide* purchaser. (*Wastl* v. *Montana Union Ry. Co.,* 17 Mont. 213; *Knowles* v. *Nixon,* 17 Mont. 473; *State* v. *Gay,* 18 Mont. 61-62.)

Conflicting instructions will not be sustained. (*Kelley* v. *Cable Co.,* 7 Mont. 70; *Walsh* v. *Mueller,* 16 Mont. 180.)

As to the rule applicable to a case where partnership property has been applied to the payment of the individual debt of one of the partners, see, *Huiskamp* v. *Moline Wagon Co.,* 121 U. S. 310-323; *Case* v. *Beauregard,* 99 U. S.. 119-125; *Howe* v. *Lawrence,* 9 Cush. 553, 57 Am. Dec. 68, and cases there cited; *Locks* v. *Lewis,* 124 Mass. 1.

The right of a simple contract creditor of a partnership to have the assets of the firm first applied to the payment of the firm debts does not amount to a lien upon the property, but is a mere equity, which vanishes when the partners part with their interest in the property. (*Stahl* v. *Osmers,* 31 Oregon, 199, 49 Pac. 958.)

Instruction No. 11 does not correctly state the law applicable to this case, for the reason that there was no evidence of any bad faith on the part of either the seller or purchaser. (*Curtis* v. *Valiton,* 3 Mont. 156.)

A partner, as such, may, when his copartner has wholly abandoned the business to him, dispose of the whole partnership property at once to a creditor. (*Steinhart* v. *Fyhrie,* 5 Mont. 473, and cases cited; Code of Civil Procedure, Sec. 3232.)

*Messrs. Forbis & Mattison,* and *Mr. M. J. Gavanaugh,* for Respondent.

Where there is evidence to support a finding or verdict it will not be disturbed by the appellate court although it may be claimed that it appears to be against the weight of evidence. (*Merchants' Bank* v. *Greenhood,* 16 Mont. 430, 41 Pac. 250; *Orr* v. *Haskell,* 2 Mont. 228.)

The contention of the appellant that the verdict is not sustained by the evidence, cannot be considered on this appeal, for the reasons that his specifications as to the particulars in which the evidence fails to support the verdict are too vague and indefinite; and besides the verdict might still stand if the lack of evidence he mentions was a fact. (*Zickler* v. *Deegan,* 16 Mont. 200; *Griswold* v. *Boley,* 1 Mont. 553; *Froman* v. *Patterson,* 10 Mont. 107; *Bass* v. *Buker,* 6 Mont. 442; *Stafford* v. *Horn-*

*buckle,* 3 Mont. 493; *First Nat'l Bank* v. *Roberts,* 9 Mont. 333; *Strasburger* v. *Beecher,* 20 Mont. 145-49, p. 740.)

This court will not set aside the order refusing to grant a new trial unless the lower court could have directed a verdict for plaintiff at the close of the case; this cannot be done where there is a question as to the credibility of the evidence; whether the facts be disputed or undisputed if different minds may honestly draw different conclusions, the case should be left with the jury. (*Stephens* v. *Pendleton,* 85 Mich. 137; *Frankenthall* v. *Goldstein,* 44 Mo. App. 189; *Avary* v. *Perry Stove Mfg. Co.,* 96 Ala. 406.)

If the trial court could not have justly directed a verdict in favor of plaintiff at the close of this case, this court should not disturb the order for lack of evidence; it devolved upon the plaintiff to prove his title to the property; the jury had the exclusive right to weigh and pass upon the credibility of his testimony; therefore the jury could not have been properly deprived of this function by a direction for plaintiff. (*Pickel* v. *Isgrigg,* 6 Fed. 676; *Goodman* v. *Ford,* 23 Miss. 592; *Maus* v. *Montgomery,* 11 S. & R. (Pa.), 329; *Fritz* v. *Clark,* 80 Ind. 591; *Penn. Mining Co.* v. *Brady,* 16 Mich. 332; *Roberts* v. *Field,* 27 Mich. 337.)

Error in refusing or giving instructions will not authorize a reversal of the judgment where the verdict is manifestly right upon the whole case. (*Mann* v. *Higgins,* 83 Cal. 66; *O'Callahan* v. *Bodie,* 84 Cal. 489; *Castagno* v. *Carpenter,* 14 Colo. 524; *Wyman* v. *Filker,* 18 Colo. 382.)

It must have prejudiced some substantial right of appellant. (*Low* v. *Woerlin,* 77 Cal. 94; *Fredericks* v. *Judah,* 73 Cal. 604; *Quinn* v. *Quinn,* 81 Cal. 14; *Coddy* v. *Chicago,* 5 Dak. 97.)

· Where it appears that the jury were not misled the order will not be disturbed. (*Chalmers* v. *Chalmers,* 81 Cal. 81; *Murray* v. *White,* 82 Cal. 119.)

Error in a detached phrase, sentence or section is not rever-

sible where it is so qualified by the remainder of the charge that, regarded as a whole, the law is stated with substantial correctness. (*Monnahan* v. *Pac. Roll. Mill,* 81 Cal. 190; *People* v. *Clark,* 84 Cal. 573; *Rosenbuck* v. *Raymer,* 13 Cal. 451.)

As to motives of parties to transfer, see, *Power* v. *Alston,* 93 Ill. 587; *Phelps* v. *Curts,* 80 Ill. 112; *Morrison* v. *Bemis,* 69 Ill. 537; *Moore* v. *Wood,* 100 Ill. 454; *Skow'n Bank* v. *Cutler,* 49 Me. 318.

The doctrine of reputed ownership would entirely justify the jury in ignoring the transfer as claimed to have been made from Lorenzo Graehl to Hyrum Graehl. (*Ex parte Hare,* 1 Deac. 16, 2 Mont. & A., 478, per Erskine, Ch. J.; *Ex parte Newton,* I. M. D. & D. 252; *Ex parte Hunter,* 2 Rose, 382; *Hogard* v. *McKinzie,* 25 Beau. 493; *Whitman* v. *Leonard,* 3 Pick. 177.)

Lien of creditors on firm property is paramount to that of individual creditors though the latter attach first. (*Todd* v. *Lorah,* 75 Pa. St. 156; *Chase* v. *Steel,* 9 Cal. 64; *Conroy* v. *Woods,* 13 Cal. 626; *Lindley* v. *Davis,* 6 Mont. 453.)

Neither the court in its charge nor counsel in his request for instructions has any right to assume that the matter is proved merely because there is no conflict of testimony in regard to it; as there may be a question as to the weight and credit which should be given to the testimony. (*People* v. *Webster,* 111 Cal. 381; *Barry* v. *Hoffman,* 6 Md. 86; *Saar* v. *Fuller,* 71 Iowa, 427; *Rhodes* v. *Lowry,* 54 Ala. 4.)

If the order of the court can be supported upon any theory it will not be disturbed. (*State* v. *Schnepel,* 23 Mont. 523.)

Appellant claims that many of the instructions given at the request of the respondent were not warranted by evidence. This fact, if it were a fact, is not necessarily reversible error. Except it appear that the jury were misled by such instructions to the injury of appellant, the order will not be reversed. (*People* v. *Divine,* 95 Cal. 227; *Rara Avis Mining Co.* v. *Bouscher,* 9 Colo. 385; *People* v. *Cochran,* 61 Cal. 548; *Berry* v. *Missouri Pac.,* 124 Mo. 223.)

An instruction cannot be deemed erroneous if there be any evidence, however slight, upon which to base it. (*Goodell* v. *Bluff City Lum. Co.*, 57 Ark. 203; *Sawyers* v. *Drake*, 34 Mo. App. 472.)

The mistake in the initials of the plaintiff, in instruction No. 17, is not ground for reversal. (*Salina M. & E. Co.* v. *Hoyne*, (Kan. App.) 63 Pac. 660.)

.MR. COMMISSIONER CALLAWAY prepared the opinion for the court.

In order to arrive at an understanding of the issues involved in this appeal, it is necessary to state the case somewhat in detail.

It appears from the record that one Jacobson and Hyrum Graehl were engaged in the grocery business in Butte for some years prior to 1894 under the name of Jacobson & Graehl, and that Lorenzo Graehl bought Jacobson out, probably in 1894, and the firm then became Graehl & Graehl. On August 19, 1890, H. Graehl and A. N. Yoder executed to Hattie C. Libby a note for $300, due in six months after date, and bearing interest at one per cent per month. On August 22, 1893, H. Graehl and A. N. Yoder executed to Hattie C. Libby a note for $350, due in one year after date, and bearing interest at one and one-half per cent. per month. On January 22, 1896, Graehl & Graehl and A. N. Yoder executed to W. A. Clark & Bro. a note for $300, due in sixty days after date, and bearing interest at one per cent. per month. At the time of the trial, Hattie C. Libby had become the wife of the plaintiff, Yoder. A bill of sale was introduced in evidence, which purports to have been executed by Lorenzo to Hyrum Graehl on March 6, 1896, and which conveys to Hyrum all of Lorenzo's right, title and interest in the firm and business of Graehl & Graehl for a consideration of $500. After executing this bill of sale, Lorenzo went prospecting in Madison county, where he remained some six or seven months. On

March 17, 1896, Hyrum Graehl executed and delivered to the plaintiff, Yoder, a bill of sale, whereby he conveyed all his "right, title, and interest in and to the following described personal property," describing it in detail—such as "2,000 lbs. flour, 300 lbs. corn meal, 300 lbs. bacon, 4 chests tea," etc. No mention is made in this bill of sale of the good will of the business. The plaintiff testified: "On the 17th day of March I bought this stock of goods at 101 South Main street. I found H. Graehl in possession there. The consideration that I paid for that stock of goods was $1,100. I paid it by those notes and other money that he had borrowed up to that time." The Libby notes are indorsed as follows: "March 17, '96. Received payment in full to date from A. N. Yoder. Hattie C. Libby." The W. A. Clark & Bro. note bears this writing on its fact: "Canceled. Paid for stock. A. N. Yoder." It is indorsed: "Pay to A. N. Yoder or order without recourse, W. A. Clark & Bro., per Alex. J. Johnston, Cash." When the bill of sale from Hyrum Graehl to plaintiff was executed, one Joseph Graehl, a brother of Lorenzo and Hyrum, was present, and at the same time Hyrum sold and transferred to said Joseph Graehl all of the book accounts of the firm of Graehl & Graehl. When these legal documents were completed, plaintiff testified that he took possession immediately—it was then eleven o'clock at night—and placed Joseph Graehl in charge as his agent. On the next day the defendant, who was then sheriff of Silver Bow county, acting under a writ of attachment issued in an action wherein A. F. Bray was plaintiff and the firm of Graehl & Graehl were defendants, took possession of the stock of goods described in the bill of sale from Hyrum Graehl to plaintiff, and also took possession of plaintiff's storeroom. He demanded the keys of plaintiff, and, upon receiving them, put the plaintiff out, locked the doors, and kept possession of the storeroom for about forty-five days. In due time Bray recovered judgment against the Graehls, had execution issued thereon, and the defendant, as

such sheriff, sold the goods claimed by plaintiff in pursuance thereof. The plaintiff then began this suit.

Plaintiff states his cause of action in two counts. The first is in the usual form of an action for damages for the wrongful conversion of personal property, the plaintiff praying for judgment against the defendant in the sum of $1,150. In the second cause of action the plaintiff alleges "that on the 18th day of March, 1896, he was the owner and in possession, and entitled to the possession, of all the following described property, to-wit." Then follows a description of the personal property as shown in his bill of sale, and then this allegation: "That on the said 18th day of March, 1896, plaintiff was then and there the owner of said stock of goods, and of a leasehold estate in and to the said storeroom and premises, and was engaged in a profitable business in selling and dealing in groceries at retail at No. 101 South Main street, Butte, Montana." Then, "that on the said 18th day of March, 1896, the defendant wrongfully and without the consent of plaintiff entered upon the said premises, and ousted and ejected plaintiff therefrom, and took possession of the said stock of goods, and wholly deprived plaintiff of his said stock of goods and of his said storeroom and place of business, and wholly destroyed plaintiff's said business, to the damage of plaintiff in the sum of one thousand dollars."

The defendant denies generally the allegations of both counts of plaintiff's complaint, and pleads justification as to each. He alleges that, as the sheriff of Silver Bow county, he took the personal property described in plaintiff's complaint under and by virtue of a writ of attachment issued out of the district court of his county in an action wherein A. F. Bray was plaintiff and the firm of Graehl & Graehl were defendants, and that all of the property so attached was the property of Graehl & Graehl at the time of the attachment; "that the plaintiff herein, A. N. Yoder, claims to have been entitled to the possession, and to have been the owner of all the said property attached as aforesaid, and described in the complaint herein, on said March 18,

1896, by virtue of a pretended bill of sale of said property executed on said day to said A. N. Yoder by said Hyrum Graehl, but defendant alleges that the said pretended bill of sale was a covinous and fraudulent transfer, made without valid consideration in law, not accompanied by immediate actual and continued change of possession, and not an absolute transfer of said property as it pretended to be, but a transfer in trust to secure said A. N. Yoder for an individual indebtedness of Hyrum Graehl, contracted long prior to his partnership with Lorenzo Graehl as Graehl & Graehl, and with a secret understanding with said Yoder that, whatever of said property or its proceeds remained after paying such individual indebtedness, such balance should be paid to Graehl & Graehl, or revert to them as their property; that said transfer was made with intent to hinder, delay, and defraud the creditors of said firm of Graehl & Graehl, and prevent the enforcement of their demands against Graehl & Graehl, and was such a conveyance as would hinder, delay, and defraud the creditors of the said Graehl & Graehl." In this affirmative defense no justification is attempted to be made by defendant for his possession of plaintiff's storeroom.

The plaintiff, by replication, denies all the affirmative matter asserted in the answer.

It is proper to suggest that the pleadings of the respective parties were treated by them as sufficient in the court below. Upon the trial the jury found for the defendant. From an order denying plaintiff's motion for a new trial, he prosecutes this appeal.

1. At the trial the plaintiff was asked: "Q. Do you know anything relative to the value of the good will of the business which you had purchased there on the 17th day of March? A. Yes; I think I do. Q. What was the good will of that business worth?" This latter question was objected to "for the reason that it calls for a speculation and is too remote." The court sustained the objection, and plaintiff assigns error. The court's ruling was correct, but for other reasons than those

urged. No foundation was laid for any such evidence either
in the pleadings or in the previous testimony of the plaintiff.
The good will of a business is property, transferable like any
other (Section 1372, Civil Code), but it does not appear that
the plaintiff ever purchased the good will of the firm of Graehl
& Graehl. On the contrary, the plaintiff received from Hyrum
Graehl an itemized bill of sale, particularly specifying the
property sold, and evidence could not be received to add to the
terms of this writing, so as to show that the good will formed a
part of the act of sale. (*Hebert* v. *Dupaty*, 42 La. Ann. 343,
7 South. 580.)

The question asked called for evidence which was wholly in-
admissible for any purpose and it was therefore subject to a
mere general objection, which that urged was, in effect.

2. The plaintiff was asked the following question: "Tak-
ing into consideration the fact that you had a leasehold interest
in that storeroom, and that you were deprived of the possession
of the storeroom, and that you were deprived of a building to
carry on the business, by reason of the sheriff of Silver Bow
county, Montana, taking possession of that storeroom, what
amount of damage did you suffer by reason of the taking of
the building and good will of the business and storeroom by the
sheriff?" This was objected to "for the reason that such dam-
age is merely speculative or prospective damage, and does not
relate to the actual damage, and there has been no evidence
offered tending to show that the business was carried on there at
any profit, but, rather, at a loss." The court sustained the ob-
jection, to which plaintiff takes exception.

In this ruling the court did not err. The objection amounted
to a mere general one. When an "offer of testimony includes
that which is admissible with that which is not, and the compe-
tent and incompetent are blended together, it is not the duty of
the court to separate the legal from the illegal, but the whole
may be rejected when objection is made," and the party against

whom the ruling is made cannot complain because the objection is too general. (Jones on Evidence, Sec. 897.)

3. The plaintiff complains because the court refused to strike out certain incompetent testimony of the witness Bray. An inspection of the record discloses the fact that the plaintiff sat by and allowed it to go to the jury without objection, and afterward moved to strike it out. If the testimony had been favorable to plaintiff, presumably he would have been satisfied to allow it to remain. In permitting it to be adduced without objection, he took the chance of being injured, should it prove unfavorable. It is the settled law that one must object to improper testimony when it is offered, or abide the result. The failure to object at the proper time waives the error. (Jones on Evidence, Sec. 898; *Hughes* v. *Ward,* 38 Kan. 452, 16 Pac. 810; *Cleveland C., C. & I. Ry. Co.* v. *Wynant,* 134 Ind. 681, 34 N. E. 569; *Dallmeyer* v. *Dallmeyer* (Pa.), 16 Atl. 72; *Chicago, St. L. & P. R. R. Co.* v. *Champion,* 9 Ind. App. 510, 36 N. E. 221; *Perkins* v. *Brainerd Quarry Co.* (Com. Pl.), 32 N. Y. Supp. 230; *Haverly* v. *Elliott,* 39 Neb. 201, 57 N. W. 1010; *Vermillion Artesian Well, etc. Co.* v. *City of Vermillion,* 6 S. Dak. 466, 61 N. W. 802.) An exception to this rule is that when testimony is offered which may be competent upon the showing made, and its incompetency is afterwards developed, either by the subsequent testimony of the witness, or upon his cross-examination, or when incompetent testimony is volunteered by the witness in response to a proper question, it should be stricken out on motion.

4. The court gave the jury the following instruction at the request of the defendant: (No. 1) "If you believe from the evidence that the alleged transfer of his interest in the partnership from Lorenzo Graehl to Hyrum Graehl was made without consideration or secretly, or for any fraudulent purpose, or to allow said Hyrum Graehl to make a transfer of the partnership property to Yoder upon the notes given in evidence, and with intent to hinder, delay, and defraud creditors of the partner-

ship in that way, then you must find that the bill of sale or transfer from Hyrum Graehl to A. N. Yoder of the stock of goods afterwards attached was not a legal or valid conveyance, and did not prevent the levy of the attachment by the creditors. And if you find that the plaintiff, Yoder, was not the legal or real owner of the notes introduced in evidence, at the time of the said transfer of the stock of goods, but the facts concerning the true ownership of said notes were concealed for the purpose or with the designed effect of defrauding or defeating creditors of said partnership, or that the indebtedness evidenced by the said notes, or any of them, was the individual indebtedness of said Hyrum Graehl, and not of the partnership, and that the partnership still existed as to the creditors up to the time of such alleged sale, then you must disregard such transfer, as the same would not be supported, in law, under such facts, but would be void, as to the rights of the creditors of said partnership." This was error. This instruction practically told the jury that if Lorenzo Graehl had transferred his interest in the partnership to Hyrum without consideration or secretly, or for any fraudulent purpose, or to enable Hyrum to commit a fraud, then it should find against the plaintiff, even though he be an innocent purchaser in good faith, and for a valuable consideration. The bill of sale might have been fraudulent between the Graehls, but how could that have prejudiced the rights of one who knew nothing of such fraud? This instruction also erroneously told the jury, in effect, that the plaintiff did not have the right to secure himself by a *bona fide* purchase of the property, even though he was liable for the payment of the three notes introduced in evidence.

Another ground of criticism of this instruction is that there was no evidence adduced by either plaintiff or defendant as to whether the ownership of the notes was concealed by any one. Instructions must be warranted by the pleadings and evidence. (*Brownell* v. *McCormick,* 7 Mont. 12, 14 Pac. 651; *Kelley* v. *Cable Co.,* 7 Mont. 70, 14 Pac. 633; *Walsh* v. *Mueller,* 16

Mont. 180, 40 Pac. 292; *Goodkind* v. *Gilliam,* 19 Mont. 385, 48 Pac. 548.) But we fail to see what difference it could make to the creditors of the firm of Graehl & Graehl whether the ownership of the notes was in the plaintiff or Hattie C. Libby, so long as the firm was liable for the payment thereof.

5. Instruction No. 2 is erroneous because not warranted by the evidence. The alleged sale to plaintiff was made by Hyrum Graehl, and not by the firm of Graehl & Graehl. This is one of the undisputed facts in the case.

6. We cannot approve of instruction No. 5. It is argumentative in form, and likely to prejudice the jury. The principles of law treated by it may be easily stated to the jury without resort to innuendo.

7. In instruction No. 6 the court commented on the weight to be given the evidence of the parties to the action This was error. "The jury being the sole judges of the weight to be given to the testimony, the court should not tell them what particular weight to give to any portion thereof." (*State* v. *Gleim,* 17 Mont. 17, 41 Pac. 998, 31 L. R. A. 294, 52 Am. St. Rep. 655; *Wastl* v. *Montana Union R. R. Co.,* 17 Mont. 213, 42 Pac. 772; *Knowles* v. *Nixon,* 17 Mont. 473, 43 Pac. 628; *State* v. *Gay,* 18 Mont. 51, 44 Pac. 411.) And while the court gave the true rule at the end of this somewhat lengthy instruction, that did not remove or overcome the objectionable feature mentioned; as completed, different portions of the instruction are conflicting, and it is therefore misleading.

8. Instruction No. 8 is as follows: "If you find from the evidence that the alleged sale from Lorenzo Graehl to Hyrum Graehl about March 6, 1896, was not made for valuable consideration, or in good faith as to the creditors, and was not published or given notice of to the creditors, but remained secret, then you will not consider such transfer as vesting the title to said property in Hyrum Graehl alone; but if you find that the Graehls or Hyrum Graehl continued to carry on business at the same place in the same manner as before, under the name and

style of Graehl & Graehl, then a transfer from him alone to the plaintiff, Yoder, would not be valid as against the creditors of said firm." This is erroneous. Whether the bill of sale from Lorenzo to Hyrum was fraudulent or not, it conveyed to Hyrum the legal title to the property, so far as Lorenzo was concerned, and placed Hyrum in a position to give an absolutely good title to one purchasing in good faith, for a valuable consideration, and without notice of existing defects. In order to vitiate the sale from Hyrum Graehl to plaintiff, it was incumbent upon the defendant to affirmatively connect the plaintiff with the fraud, if any there was.

9. Instruction No. 9 is incorrect because not warranted by the evidence. That Lorenzo Graehl conveyed his interest in the partnership to Hyrum by bill of sale dated March 6, 1896, was conceded. Therefore this instruction is erroneous for the same reasons given as to instruction 8.

10. Instruction No. 16 reads, in part, as follows: "The jury is instructed that the burden of proof is on the plaintiff to show by the preponderance or greater weight of the evidence his right to the possession of the property in controversy." In this instruction the court should not have used the words "the property in controversy." The plaintiff's leasehold interest in the storeroom was a part of the property in controversy, and this the defendant did not levy upon. So far as the record is concerned, the defendant was a trespasser in the storeroom, of which he retained possession for about forty-five days. While there was no proof as to any special damage sustained by plaintiff upon this branch of the case, he was, under the proofs adduced, entitled to nominal damages for the defendant's trespass.

11. Defendant's instruction 17 is erroneous for the same reason assigned as to instruction No. 16. It should also have correctly stated the initials of plaintiff's name.

12. The court instructed the jury at great length. Eighteen pages of the record are taken up by the instructions. Whether they are all in the record, we do not know, but it appears to con-

tain over thirty of them. Those before us were not numbered by the court, and we have been obliged to designate them by the numbers given in appellant's brief.

How the jury could have been aided in its labors by this mass of reading is conjectural. Aside from being of such great length, the instructions are replete with repetition and legal verbiage. Instructions are given to a jury to enlighten, not to confuse, it. The court should not attempt to instruct a jury as to all the law extant upon the particular subject under consideration. In the case at bar a few brief and clear instructions would have been ample to aid the jury in its investigations.

For the reasons given, we are of the opinion that the order should be reversed, and the cause remanded for a new trial.

PER CURIAM.—For the reasons given in the foregoing opinion, the order is reversed, and the cause is remanded for a new trial.