BECWAR, APPELLANT, *v.* McNICOL, RESPONDENT.

(No. 6,728.)

(Submitted January 16, 1931. Decided March 7, 1931.)

[296 Pac. 1027.]

*Mr. Victor R. Griggs,* for Appellant. .

*Mr. A. F. Lamey* and *Mr. E. V. Ahern,* for Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiff, Ray J. Becwar, has appealed from a judgment against him and in favor of Leon McNicol, defendant, in an action instituted to recover a balance alleged to be due on a promissory note purchased by Becwar with other assets of the defunct Havre National Bank. The defense interposed was that a payment, indorsed on the note, was made under a compromise agreement in full settlement of the debt due to plaintiff's assignor.

The record discloses the following facts and circumstances with relation to the note sued upon: In 1920 defendant executed and delivered to the Havre National Bank his promissory note for $1,375, secured by chattel mortgage on stock, farm implements, etc. The note and security were delivered as collateral security for a debt of the Havre Bank to the Federal Reserve Bank of Minneapolis, and in 1921 defendant executed and delivered to the latter bank a chattel mortgage on crops and increase of stock as further security for the payment of the note. Thereafter the Havre National Bank failed and, in time, Frank Browne was appointed receiver of the Havre Bank and agent for the Reserve Bank.

In the fall of 1924 defendant was financially distressed and was contemplating filing a petition in bankruptcy; he com-

municated these facts to Browne and offered to turn over to Browne what was left of the chattel security before filing the petition, but Browne did not accept the offer; instead he authorized defendant to dispose of the chattels, and agreed, on payment to him of the receipts therefrom, to cancel the mortgages of record. Defendant realized $300 from the sale of chattels, $100 on the note held by him against a third party, and borrowed $200 from his father. On November 8, 1924, he paid the $600 to·Browne and received from him releases of three chattel mortgages, the mortgages, or copies of them, and numerous other papers relating to his indebtedness. The note bears indorsements of $40, paid in 1921, and the $600 paid November 8, 1924. Thereafter the receiver liquidated the indebtedness of the Havre Bank to the Federal Reserve Bank, and the latter turned back to him all collateral held by it, including the note in suit here. In April, 1929, plaintiff purchased the remaining assets of the Havre Bank in which was included this note.

There is no dispute as to the foregoing facts, but defendant and Browne differ as to the understanding had with reference to the payment made on November 8, 1924. Browne's version of what took place was that he agreed to permit the defendant to sell the personal property mortgaged, and that, on payment of the amount received, he would discharge the mortgages of record, but did not intend or promise to compromise the claim or release defendant from liability to the full extent of the note. He admitted the receipt of a check for $600 on November 8, 1924, for which he gave defendant credit on the note and thereupon delivered to defendant instruments in cancellation of the chattel mortgages. McNicol's version of what took place is that he told Browne that he would not make a payment upon the note unless it was in full settlement thereof, otherwise Browne could foreclose the mortgages and he (McNicol) would file a petition in bankruptcy; that Browne did not want to do this and asked what defendant could raise; the reply was $500, but Browne thought he

should raise $600. Thereafter defendant realized the desired amount, $600, from the sources above mentioned. He testified: "We definitely decided on $600 as the basis of settlement some time after I started to raise the money." With the money in hand he went to Browne stating he was ready to settle. Browne asked if he had the $600, and, on receiving an affirmative reply, said, "All right, we will go to the office." All of this testimony went in without objection.

The defendant was then asked: "What was your understanding that he would do if you raised the $600?" to which he replied, "He would release the mortgage." Thereupon counsel for plaintiff stated: "Just a moment. We object to that as incompetent and inadmissible unless they show the authority of the agent to compromise this debt, it being paper held by a national bank." The court: "Objection sustained." The defendant then continued his relation of what took place on November 8. He stated that he went to Browne's office, told him he was ready to settle, to which Browne replied, "All right." He delivered to Browne his check for the $600, who accepted it and delivered to him "releases of mortgages."

Thereafter counsel for plaintiff asked for a general objection to any statement relative to any compromise or settlement for less than the face of the note "unless it is shown that the agent, Frank Browne, had full authority to make such compromise and settlement." The court: "Objection overruled." The documents delivered to defendant by Browne were then introduced.

Having theretofore stated that he went to Browne because of a letter he received from the Federal Reserve Bank, defendant, without objection, testified that the letter, since lost, "stated that they wanted a settlement and whatever settlement Mr. Browne and I came to was satisfactory to them, that Mr. Browne had full authority to settle." Defendant was then asked what was his understanding as to what he was to get for the check, whereupon counsel for the defendant

renewed his former objection, which was sustained by the court.

Defendant then testified that the next morning he discovered that the note was not among the papers delivered to him by Browne and then went to see Browne, who stated that he had given the note to defendant. He was asked if he had any further conversation that morning with Browne, when counsel again interposed his objection to testimony regarding "settlement," which objection was sustained; nevertheless the witness continued to testify concerning the transactions and conversations had, and, among other things, stated that Browne had later said that "they would have to have another $100 in settlement of this $1,375 note," and that Browne, purporting to read from a letter, quoted his principal as saying that "under the fine showing Mr. McNicol had made he should be able to make another payment of $100 before release of the note." No motion was made to strike any of this testimony. The witness was later asked, "Did you and he come to an agreement and understanding as to what you would receive for the $600 you were to pay?" to which the witness replied, "Yes sir." Q. "What was that understanding and agreement?" Thereupon counsel for plaintiff renewed his objection, which was sustained; whereupon the witness was withdrawn with leave to make an offer of proof.

On the court's convening the next morning, the court declared that it was of the opinion that the admission in the answer that Browne was the agent of the Federal Reserve Bank was sufficient, and therefore the defendant might be recalled and the evidence rejected offered. This was done. Defendant went over the whole transaction again, but practically the only new matter brought out was the statement: "He got out the papers and I looked them over and said, 'this is a settlement in full of everything, return of my note and cancellation of the mortgage?' and he said 'Yes sir.'"

1. We have set out the testimony more fully than would otherwise be necessary, as plaintiff's first assignment

of error is based on the action of the court in permitting the defendant to testify as to an agreement to settle for less than the full amount due on the note "without showing authority in Frank Browne, as agent, to make such settlement." This assignment can only apply to the action of the court in reversing its former rulings and finally permitting the defendant to testify as to the agreement.

As shown, all former objections were made after the defendant had fully answered the questions propounded, and, if any of the testimony was volunteered—as may have been the case since the record is in narrative form—no motion was made to strike that considered objectionable. As to this evidence, plaintiff's objections came too late and cannot be considered. (*Yoder* v. *Reynolds,* 28 Mont. 183, 72 Pac. 417; *Labbitt* v. *Bunston,* 84 Mont. 597, 277 Pac. 620.)

Defendant's testimony, not objected to, was sufficient, if believed, to establish the agreement and settlement, and, as the further testimony added nothing thereto, it is immaterial whether or not the court erred in later admitting the testimony over plaintiff's objection. However, when the facts were related the second time, defendant had already, by his testimony regarding the letter he said he had received from the Federal Reserve Bank, overcome the objection urged against his testimony; he had made prima facie proof of specific authority given Browne to settle on such terms as he might deem best. It is true that, when the letter was first mentioned, plaintiff objected to a statement of its contents unless it was shown to have been written by one in authority, but later, when defendant presumed to give the contents of the letter, no objection was interposed. Under the circumstances it was not reversible error finally to admit the testimony quoted over the objection of plaintiff.

2. In rebuttal plaintiff introduced in evidence the deposition of Harry Yaeger, deputy governor of the Federal Reserve Bank, who testified that in November, 1924, he had full charge, supervision, and control over collections of notes and

securities with respect to insolvent national banks and was "familiar" with the McNicol note in the hands of Frank Browne for collection. Yaeger stated that, "so far as the records of the Federal Reserve Bank * * * are concerned, * * * there is no letter or other correspondence direct to us from Mr. McNicol." On objection, the court excluded the answer to the following question: "Did the Federal Reserve Bank * * * ever give * * * Browne * * * authority to compromise notes * * * placed in his hands for collection without first obtaining the consent of the * * * bank?" Error is predicated on this ruling. The question called for the conclusion of the witness; the witness should have been called upon to state only the facts from which the authority of the agent could be determined. (*Parsons* v. *Rice*, 81 Mont. 509, 264 Pac. 396.)

On like objection the court excluded the answer to the following question: "Did the * * * bank ever give * * *. Browne any authority to compromise the * * * McNicol note upon payment of $600, or any amount except the full amount due thereon?" This specific question does not differ in effect from the general question last quoted.

The rulings of the court, based on the objection that the questions called for a conclusion of the witness, were not erroneous.

Without objection Yaeger was permitted to testify that ▮▮▮ "the $600 payment received by us in 1924 was not payment in full of the McNicol note but was accepted by us as part payment only." Error is not specified on any of the instructions of the court, all of which ignore the question as to whether or not Browne had specific authority to compromise the claim, and base plaintiff's right to recover upon two special interrogatories requiring .the jury to determine whether both Browne and McNicol at the time the $600 payment was made understood that such payment was to be made and accepted as payment in full. These interrogatories were answered in the affirmative, and, under the instructions given

without objection, the jury was justified in returning a verdict for the defendant.

Judgment affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.